IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| RICARDO ROMERO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-16-595-R |
| PRO SECURITY, LLC d/b/a EVENT SECURITY, LLC, EVENT SECURITY, LLC, JACOB ARGRAVES, BACKWOODS PRODUCTIONS, LLC, a/k/a BACKWOODS MUSIC FESTIVAL LLC, | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Backwoods Productions, LLC's Motion for Summary Judgment. Doc. 56. Plaintiff Ricardo Romero has responded. Doc. 57. Backwoods replied. Doc. 58. For the reasons that follow, Backwoods's Motion is GRANTED.

This suit centers around a September 2015 altercation at the Backwoods Music Festival, an overnight campout and weekend concert set outside Stroud, Oklahoma. Plaintiff Ricardo Romero, a manager for one of the bands performing at the concert, allegedly sustained a serious cut to his upper arm during a dispute with Anthony Creek, a security guard employed by either Pro Security, LLC, or Event Security, LLC. Backwoods

1

Productions contracted with Event Security to provide security guards for the concert.[1] The altercation began when Creek confronted Mr. Romero after he tried to exit the concert by hopping the fence rather than using the designated exit point. The pair's confrontation ended when Creek's scissors—which he was allegedly using to remove concert-attendees' wristbands—accidentally cut Mr. Romero's arm while the two men wrestled on the ground. The injury required four stitches and a healthy dose of ibuprofen but no further medical expenses. Doc. 56, at 2.

Mr. Romero sued Pro Security, Event Security, Backwoods, and Jacob Argraves (the alleged owner of Pro Security). The Court has already dismissed all claims against Argraves and the claims against Event Security and Pro Security for negligent hiring, training, and supervision. Doc. 51. While the two security companies still face claims for negligence based on Creek's conduct, the only remaining claim against Backwoods is for negligent hiring, training, and supervision. Mr. Romero claims that Backwoods breached its "duty of reasonable care in the hiring, training and supervision of" the security personnel when it allowed Creek—a convicted felon who lacks an Oklahoma license to serve as a security guard[2]—to serve as security at the concert. Doc. 15, at 4. According to Mr. Romero, Backwoods could have easily checked the security guards for their licenses. In

---

[1] The security-contract is between Backwoods Music Festival, LLC and Event Security, LLC. However, Backwoods Music Festival, LLC is a non-entity and Defendants stipulate the contract should have been between Backwoods Productions, LLC, and Pro Security, LLC. Doc. 56, at 3 n.1. As the Court explained in its earlier Order, Event Security is apparently the trade name under which Pro Security does business. Doc. 51, at 3 n.1.

[2] Under the Oklahoma Security Guard and Private Investigator Act, any person employed as a security guard must have a license from the Council on Law Enforcement Education and Training and is required to carry proof of such license while on duty. Okla. Stat. tit. 59, §§ 1750.4, 1750.9.

response, Backwoods argues that because the duty to confirm that the security guards were properly licensed rested with Pro Security or Event Security, not Backwoods, it is thus entitled to summary judgment.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of a substantive claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id*. When considering a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Backwoods's Motion hinges on a matter of law: did Backwoods have a legal duty to ascertain whether the employees of the security company it had hired were properly licensed? Arguing it did not, Backwoods points to a recently decided case, *Ritter v. Joe Cooper Ford of Midwest City, LLC d/b/a Joe Cooper Ford*, No. 113,733 (Okla. Civ. App. March 17, 2017), in which the Oklahoma Court of Appeals found that a car dealership had

no duty to check whether the employees of the company it had hired to transport and then detail the dealership's cars were licensed to drive the vehicles. Doc. 52, Ex. 1, at 26–27. Doc. 52, Ex. 1. In absolving the dealership of any liability, the court relied on the general rule in Oklahoma that "an employer is not liable for the negligent acts or omissions of an independent contractor committed in the course of performing the contracted service." *Id*. at 14 (citing *Bouziden v. Alfalfa Elec. Co-op., Inc.*, 16 P.3d 450, 455 (Okla. 2000)).

That rule might be simple enough, the plaintiff argued, but the dealership, Joe Cooper Ford, was nonetheless liable for injuries plaintiff sustained because Joe Cooper Ford could have easily verified whether the persons transporting the vehicles had drivers licenses. *Id*. at 2–4. Those persons were employees of Ultimate Detail, the company the dealership had hired to, first, transport several decommissioned police vehicles from the dealership location and then, second, detail the vehicles to remove the police decals. *Id*. Joe Cooper Ford learned that these employees lacked drivers licensed only after they led police on a high-speed chase that culminated in plaintiff's injuries. *Id*. at 3.

The Court of Appeals held that the general rule applied to relieve Joe Cooper Ford of liability. *Id*. at 36. Oklahoma law was clear: a hiring party may be liable for an independent contractor's negligence where (1) "the work is inherently dangerous or unlawful," the hiring party "owes a contractual or defined legal duty to the injured party," or (3) the hiring party "knows or reasonably should have known the contractor was incompetent for the work." *Id*. at 15. Because plaintiff had presented no evidence that Joe Cooper Ford should have known that Ultimate Detail was incompetent to perform the work—that is, that its employees were not licensed—Joe Cooper Ford was not liable. *Id*.

4

at 21. Oklahoma law imposed no duty on the dealership to verify the credentials of Ultimate Detail's employees:

> [Joe Cooper Ford] should be able to rely on the assumption that [Ultimate Detail] will follow the law; it should not be required to do what it would do as an employer – e.g., require a background check of its employees – or as a seller to its customers who are interested in purchasing its product – e.g., require customers to present proof of insurance or a license.

*Id*. at 28.

As in *Ritter*, the general rule controls here. Backwoods should have been able to rely on the assumption that Pro Security would follow the law and ensure that its employees were properly licensed to serve as security guards.[3] Under not only *Ritter* but also the general rule that hiring parties are not liable for the negligence of independent contractors, Backwoods had no legal duty to check the security guards' credentials. That was the security company's obligation as an independent contractor.[4] Granted, if Mr. Romero had put forth any evidence that Backwoods should have suspected the security guards lacked

---

[3] This assumption is also why it is irrelevant whether Backwoods actually contracted with Event Security or Pro Security for security services. Again, Event Security is apparently Pro Security's trade name. Mr. Romero's seems to argue that because Backwoods contracted with Event Security—not pro Security—Backwoods cannot rely on any assertion by Pro Security that it is employees were licensed to provide security services. The problem is that under the general rule, as demonstrated in *Ritter*, it is immaterial who, if anyone, asserted the security company was licensed. Rather, the relevant point is that Backwoods—because it had no reason to suspect otherwise—could rely on the assumption that the security guards were legally licensed.

[4] The Court will also presume, given no objection from Mr. Romero, that Event Security and/or Pro Security are in fact independent contractors. And to be sure, the Court sees no evidence that either would not be an independent contractor, i.e., "one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work." *Bouziden*, 16 P.3d at 455 (Okla. 2000).

5

licenses, Backwoods could face liability for its failure to check. But Mr. Romero has not put forth any such evidence. Judgment for Backwoods is therefore appropriate.

Though Mr. Romero raises several arguments on why judgment for Backwoods is inappropriate, none persuades the Court. His first argument is essentially procedural: Backwoods, he argues, has moved for summary judgment only on the claim for negligent *hiring*—not for negligent *training or supervision.* Backwoods, though, expressly moved the Court to enter summary judgment in its favor on the *claims* asserted against it, *see* Doc. 56, at 9, and the Court finds such judgment appropriate.

Second, Mr. Romero argues that Backwoods was negligent because there is no evidence that the company it contracted with, Event Security, was licensed to provide security services. Again, the Court acknowledges the confusion over whether Event Security or Pro Security is the proper defendant in this case. But at any rate, Mr. Romero is asserting a new claim. His claim has never been that Backwoods was negligent for contracting with Event Security. Rather, it was that Backwoods breached its duty of care by (1) allowing unlicensed convicted felons to serve as security guards and (2) failing to check whether security personnel had licenses. *See* Amended Complaint, Doc. 15, at 4. This new argument by Mr. Romero amounts to no more than an inappropriate attempt to informally amend his complaint less than two weeks before trial.

Mr. Romero's third and final argument is, simply put, that these facts are different than those in *Ritter*. Of course they are. But this does not deprive Backwoods of the presumption under Oklahoma law that an independent contractor will act lawfully. And it certainly does not relieve Mr. Romero of his burden to produce evidence that Backwoods

should have known that Mr. Creek or the other security guards were not licensed. Defendant Backwoods's Motion for Summary Judgment [Doc. 56] is therefore GRANTED.

IT IS SO ORDERED this 31st day of May 2017.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE